Schnell *et al. vs.* Toomer *et al.*

JOHN C. SCHNELL, trustee, *et al.*, plaintiffs in error, *vs.* FRED-ERICK A. TOOMER, administrator, *et al.*, defendants in error.

1. An ante-nuptial contract between husband and wife and a trustee, made in 1838, with the declared object of securing the wife's property to her sole and separate use, so that the same should not be liable to the debts or contracts of the husband, and conveying said property to the trustee, in trust for the sole and separate use of the wife for life, and after her death, for the use of her issue, their heirs and assigns, forever, share and share alike; the wife, nevertheless, to have the power of selling and conveying the same absolutely in fee simple, and of passing title thereto by her own deed or bill of sale; *and should she die, leaving no issue of her body living at the time of her death, and leaving no will disposing of the property*, then, the trustee to hold in further trust for certain designated persons, and their heirs forever, share and share alike; and if the wife should die leaving no issue of her body living at the time of her death, then the property to be held by the trustee in further trust to and for such uses as she might, by last will, direct and appoint, vested the legal title in the trustee, and the same remained in him during the whole period of the coverture, notwithstanding the wife's power to sell and convey the property, she not having exercised the power.

2. Against ejectment brought in 1860 for a tract of land embraced in the trust, the wife suing by her trustee, the statute of limitations would be a defense, and the wife's coverture would be no reply to the statute, inasmuch as the trustee held the title and was competent to sue. If he was barred, she, his *cestui que trust*, was barred, and all for whom, as trustee, he held in remainder.

3. The exclusion of reasonable doubt, in some civil cases, as held requisite in 11 *Georgia Reports*, 160, and 30 *Ibid.*, 619, means no more than that the jury must be clearly satisfied.

4. Where it does not appear that the party holds back evidence within his power to produce, the non-production of more full and definite evidence than he presents, raises no presumption against him; and there should be no charge given to the jury on the subject of such a presumption.

Husband and wife. Trusts. Statute of limitations. Evidence. Presumption. Charge of court. Before Judge HALL. Dougherty Superior Court. October Term, 1875.

Report unnecessary.

VASON & DAVIS; R. N. ELY, for plaintiffs in error.

L. P. D. WARREN, for defendants.

BLECKLEY, Judge.

1. This action was commenced in 1860. The statute of limitations being pleaded, the plaintiff sought to parry it by coverture of Mrs. Amos; and it was insisted that her antenuptial contract with her husband and her trustee, did not vest the legal title in the latter, so as to subject it to be acted upon by the statute during the time she was covert. The conveyance is a very singular and unusual one. Its terms are sufficiently indicated in the head-note. It will be seen that the trustee was interposed for several purposes; first, to hold off the marital rights of the husband; secondly, to give effect to remainders in favor of her issue, or in favor of other persons in case Mrs. Amos should die intestate and without issue; and thirdly, to execute such uses as she might, by will, direct and appoint. The anomalous feature of the instrument is, that while it declares a trust for her use during her life only, it gives her an absolute power of disposition by sale, and enables her to pass title by her own deed or bill of sale. This power is what is relied upon to clothe her with the legal title, and it seems to be supposed by plaintiffs' counsel that the title passed into the trustee sufficiently to keep the husband's marital rights from attaching, and then returned into Mrs. Amos free from those rights, and upon her death re-vested in the trustee in behalf of the remaindermen. This is a complex theory, and seems to us to be too curly; too much twisted to be good law. The better view of the case is, that the power in Mrs. Amos to sell and convey title should be construed as a simple power to change the investment, the specifics and the form of the trust estate, the proceeds being subject to the like trusts, or else that the mere existence of the power, however deep it might go, would not destroy or suspend the trust, and that nothing short of its actual exercise would have that effect. As there is an express limitation of Mrs. Amos' equitable estate to the period of her natural life, with contingent remainders over, this case differs materially from that of *Cook vs. Walker,* 15 *Georgia Reports,* 457.

Another suggestion we would make is, that if the legal title was in Mrs. Amos the instant after her marriage was solemnized, it is not by any means easy to see why it did not pass on through her into her husband, and thus she would have had no title whatever at the commencement of this suit. The marriage probably took place in 1838, the year the trust was created, and the adverse possession is not shown to have begun prior to 1853. But we hold that the whole scope and purpose of the trust required it to commence at the execution of the instrument, and continue during the coverture, at least, if not during the life of the wife. And if the power of sale is inconsistent with that construction, it is inconsistent with the estate conveyed; and being a reservation contrary to the grant, and not preceding but following the words of conveyance, it should be deemed subordinate, and, if necessary, be declared void. In our judgment the trustee held the legal title.

2. If the trustee was barred, it is the settled law of this state that the beneficiaries of the trust, for whom he held title, were barred also: 10 *Georgia Reports,* 358; 51 *Ibid.,* 139.

3. In regard to the evidence of adverse possession, etc., the court was requested to charge the jury, as laid down in 30 *Georgia Reports,* 619, that the plea of the statute must be supported by proof so conclusive as to exclude reasonable doubt. The court declined so to charge, but seems to have given what we think is the true meaning of the cases on the subject, namely, that it is only necessary for the proof to clearly satisfy the minds of the jury of the truth of the plea. In civil cases, as in 11 *Georgia Reports,* 160; 30 *Ibid.,* 619; and 17 *Ibid.,* 559, the exclusion of reasonable doubt means that and no more: Code, section 3749; and as "reasonable doubt" is a phrase more appropriate to criminal cases, its employment to instruct the jury in civil cases had best be avoided. There is certainly a difference in the strength of conviction required by the law in the two class of cases; and that being so, it is desirable not to confound in language what should be distinguished in thought.

4. Another request to charge was refused; it was, in substance, that if the defendants had the means of proving clearly and certainly the date of erecting a certain fence, and its position with reference to the line of the lot in controversy, and had failed to produce the evidence or render a satisfactory reason for not producing it, this circumstance would tend to raise a presumption unfavorable to their case on these points. There was no evidence before the jury that the defendants held back anything in their power. The evidence they produced was not quite certain, but it did not appear that, at the time and under the circumstances, the defendants could have made the matter any more clear. It had been a very long time since the fence was built—over twenty years—and the builders were not before the court. The court was altogether justifiable in refusing the request; more especially, as the charge given was that the jury must find against the claim of title by prescription unless they were clearly satisfied that defendants, and those under whom they claimed, had been in possession, with written color of title, for more than seven years prior to the suit, holding adversely under claim of right. The fence in question was involved only as related to the fact and date of the possession, and the charge just recited was as favorable to the plaintiffs as that requested, if not more so. As there was no motion for a new trial, we are not called to pronounce upon the sufficiency of the evidence to make out the statutory bar, upon the element of fact. We find no error of law in the record, and consequently affirm the judgment.

Judgment affirmed.